IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| NAOMI S., Plaintiff, | ) | |
| v. | ) | 1:23CV184 |
| MARTIN J. O'MALLEY,[1] Commissioner of Social Security, Defendant. | ) | |

MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Naomi S. ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff protectively filed an application for DIB on May 13, 2016, alleging a disability onset date of February 2, 2016. (Tr. at 9, 170-73.)[2] Plaintiff's application was denied initially

[1] On December 20, 2023, Martin J. O'Malley was sworn in as Commissioner of Social Security, replacing Acting Commissioner Kilolo Kijakazi. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley should be substituted for Kilolo Kijakazi as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #5].

(Tr. at 62-75, 92-100) and upon reconsideration (Tr. at 76-88, 102-09). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 110-11.) On February 12, 2019, Plaintiff, along with her attorney, attended the subsequent hearing, at which Plaintiff and an impartial vocational expert testified. (Tr. at 9.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 16), and on January 13, 2020, the Appeals Counsel denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

Plaintiff thereafter filed a case challenging the Commissioner's decision in this District. Following the filing of Plaintiff's brief, the Commissioner agreed that the case required further evaluation of the record and re-evaluation of Plaintiff's claim for disability, and moved to remand the case. In light of that request, on March 2, 2021, that Court issued a decision remanding Plaintiff's claims for further proceedings. (Tr. at 752-54.) The Appeals Council remanded the decision to the ALJ for further review. (Tr. at 758-59.) Plaintiff, again represented by counsel, attended the remand hearing on October 13, 2022, at which both Plaintiff and a vocational expert again testified. (Tr. at 686, 702-31.) On October 27, 2022, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 696), and Plaintiff filed the present action in this Court.

## II.     LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144

(4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" between her alleged onset date, February 2, 2016, and her date last insured for purposes of DIB, December 31, 2021. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 688.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> status post cervical surgery; degenerative joint disease of the knees; and obesity[.]

(Tr. at 689.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 689-90.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform medium work with additional limitations:

> [Plaintiff] had the residual functional capacity to perform a range of medium work as defined in 20 CFR 404.1567(c). Specifically, she can lift and carry 50 pounds occasionally and 25 pounds frequently; can push and pull as much as she can lift and carry; can sit, stand, and walk for up to 6 hours each in an 8-hour workday; can operate hand controls with her left hand frequently; can handle, finger, feel, and reach overhead with her left upper extremity frequently; can frequently engage in balancing, stooping, and climbing of stairs and ramps, and can occasionally engage in kneeling, crouching, crawling, and climbing ropes, ladders, or scaffolds. She can work at unprotected heights frequently; around moving mechanic parts frequently; can operate a motor vehicle frequently; can work in weather, humidity, and wetness occasionally, with vibration occasionally; can have occasional exposure to dust, odors, fumes, and pulmonary irritants, but can never work in extreme cold or extreme heat.

(Tr. at 690.) At step four of the analysis, the ALJ determined, based on the above RFC and the vocational expert's testimony, that Plaintiff was unable to perform any of her past relevant work. (Tr. at 694-95.) However, the ALJ found at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert

regarding those factors, Plaintiff could perform other jobs available in the national economy and therefore was not disabled under the Act. (Tr. at 695-96.)

Plaintiff now raises two challenges to the ALJ's RFC assessment. First, Plaintiff contends that the ALJ "applied an incorrect legal standard by requiring objective evidence to corroborate Plaintiff's symptoms." (Pl.'s Br. [Doc. #12] at 1.) Second, she argues that the ALJ failed "to properly consider the favorable Medicaid decision made by the North Carolina Department of Health and Human Services ("NCDHHS")." (Pl.'s Br. at 1.) After a thorough review of the record, the Court agrees that both of these contentions require remand.

With respect to evaluation of a claimant's symptoms, the ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017) ("SSR 16-3p"); see also 20 C.F.R. § 416.929. In Arakas v. Comm'r of Soc. Sec., 983 F.3d 83 (4th Cir. 2020), the Fourth Circuit clarified the procedure an ALJ must follow when assessing a claimant's statements:

> When evaluating a claimant's symptoms, ALJs must use the two-step framework set forth in 20 C.F.R. § 404.1529 and SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3.
>
> Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. See 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4. At this step, objective evidence is *not* required to find the claimant disabled. SSR 16-3p, 2016

> WL 1119029, at *4–5. SSR 16-3p recognizes that "symptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques." Id. at *4. Thus, the ALJ must consider the entire case record and may "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate" them. Id. at *5.

983 F.3d at 95.

In the present case, the ALJ correctly recounted the above standard in his decision. However, in the very next paragraph, he wrote as follows:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because there is insufficient objective medical evidence, both in diagnostic imaging scans, and signs recorded from physical examinations by accepted medical sources, to corroborate the loss of functioning described.

(Tr. at 691 (emphasis added).) Based on this statement, Plaintiff now argues that the ALJ erred by requiring objective evidence at the second step of the subjective symptom analysis.

As an initial matter, the Court notes that, while an ALJ may not require objective evidence to substantiate a claimant's statements, it does not follow that objective evidence becomes irrelevant at the second step of the subjective symptom analysis. Rather, as explained in Arakas, the regulations require that an ALJ (1) must "consider the entire case record" at this step, and (2) must "'not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate' them." 983 F.3d at 95 (quoting SSR 16-3p, 2016 WL 1119029, at *5) (emphasis added); see also Oakes v. Kijakazi, 70 F.4th 207, 215 (4th Cir. 2023). In other words, an ALJ may not rely on objective evidence alone at this step. The issue, therefore, is whether the ALJ in this case did so.

Here, the ALJ presents no evidence or analysis, other than the alleged lack of objective evidence, to support his dismissal of Plaintiff's testimony. As recounted in the administrative decision,

> During the October 13, 2022 hearing, [Plaintiff] testified that she underwent spinal fusion in 2016. She tried to return to work afterwards but she continued to have pain and numbness affecting her left arm. She can use her left hand for a few minutes, but she loses strength. She then has to use her right hand to assist her left hand, and after an hour she must stop completely. [Plaintiff] also testified to having pain in both knees, worse on the left. She has received injections in both knees, the more recent being her left knee 3 years ago. She also has swelling in her knees, worse on the left, especially after trying to do something on her feet for an hour. Because of her leg pain, her leg "gives way" if she steps wrong, and she needs to elevate her feet in order to minimize the swelling. Her knee and neck are also negatively affected by cold air. She can lift overhead with her right arm but not all the way with her left arm, and can walk no more than 4 hours per day total.

(Tr. at 691.) Notably, Plaintiff's contemporaneous symptom reports to her providers support her hearing testimony, particularly regarding her knees. On December 23, 2015, just prior to her alleged onset date, Plaintiff complained of right knee pain with swelling and stated that her knee "gives way at times." (Tr. at 541, 692.) Office notes from a visit a few months later, in March 2016, reflect that the "knee is swollen", with tenderness and a mildly antalgic gait. (Tr. at 324-25.) Her subsequent medical treatment in 2016 focused on her neck and arm pain as a result of a central disc herniation at C4-C5 and left paracentral herniation of the nucleus pulposus at C5-C6, resulting in a C4-C6 anterior cervical decompression and fusion surgery. (Tr. at 691, 426-68.)

On November 5, 2018, when Plaintiff was able to resume regular medical care due to her recent Medicaid approval, she "reported having pain and popping with movement, increased pain at night, increased pain when changing positions, and swelling of the left knee

and some numbness of the left foot." (Tr. at 675, 692.) Examination by Dr. Anna Goswick reflected slowed range of motion, "2/2 pain and slightly decreased knee extension" with joint line tenderness, crepitus, and bilateral swelling with minimal joint effusion, consistent with bilateral osteoarthritis. (Tr. at 678.) Dr. Goswick "recommended elevation of legs" as well as joint injections and compression stockings for pain and swelling. (Tr. at 678.) An x-ray of her knees two months later in January 2019 reflects the impression of radiologist Dr. Doughton as "Mild tricompartmental left knee osteoarthrosis, slightly progressed since 2015." (Tr. at 692, 1064.) On October 28, 2019, Plaintiff again complained of "progressively worsening, currently severe, moderate pain in the anterior knee on the left side," which she described as aching, and made worse by walking. (Tr. at 692, 1053.) Although, as noted by the ALJ, Plaintiff's orthopedist noted that her x-rays showed "essentially no [degenerative joint disease]" in either knee, the examination reflected some limitation in her range of motion in her knee, tenderness to palpation, minimal effusion, and an antalgic gait. (Tr. at 1054-55, 692-93). Her provider found that her pain was consistent with patellofemoral syndrome and referred Plaintiff for physical therapy to treat this condition. (Tr. at 693, 1051, 1055.) An x-ray from the October 28, 2019, reflects the impression of Dr. Christopher Shuman as "[m]ild bilateral knee osteoarthrosis, grossly unchanged from January 2019." (Tr. at 1050.) On May 5, 2021, Plaintiff continued to report "intermittent pain in the left knee" with swelling to her providers. (Tr. at 693, 965.) On examination, she had swelling in her lower legs and was diagnosed with osteoarthritis of bilateral knees and lower extremity swelling, with a recommendation to continue symptomatic management. (Tr. at 966.)

With respect to the symptom analysis, the ALJ provides no explanation or analysis to counter Plaintiff's consistent knee complaints, other than the assertion that there is "insufficient objective medical evidence" to support her claims. Notably, the ALJ cited four factors as guiding his RFC assessment: (1) the medical opinions of the State agency medical consultants, (2) "the repeated diagnostic imaging showing little to no change in [Plaintiff's] mild osteoarthritis of the bilateral knees," (3) Plaintiff's improved cervical spine symptoms following surgery, and (4) "the lack of significant medical treatment" since Plaintiff's alleged onset date. (Tr. at 694.) Although the subjective symptom analysis presents a separate, narrower analysis than the RFC assessment, the ALJ's overall basis for his findings presents useful insight into the ALJ's reasoning. Specifically, the Court notes that, even opening the ALJ's subjective symptom analysis to the widest range of explanations possible, the ALJ still fails to provide an adequate basis to discount Plaintiff's statements.

The State agency consultants' opinions form the primary basis for Plaintiff's RFC assessment, including the ability to perform medium work, stand and walk for 6 hours each in an eight-hour day, and perform lower body postural activities on a frequent basis. (Tr. at 692-93.) However, these opinions were issued on December 8, 2016 and May 9, 2017. As such, they predate almost all of the medical evidence relating to Plaintiff's knees during the relevant time period. They are also the only medical opinions in this case, leaving the ALJ with little but his lay opinion to decide the impact of Plaintiff's impairments on her functioning for the period from May 2017 to December 2021, or to counter Plaintiff's subjective statements. See Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1529, 416.929 and remanding where the lack of medical support for the ALJ's conclusions "amount[ed] to

the ALJ improperly 'playing doctor.'"); see also Arakas, 983 F.3d at 108 ("[T]he ALJ improperly substituted his own opinion for Dr. Harper's. An ALJ may not substitute his own lay opinion for a medical expert's when evaluating the significance of clinical findings."); Kee v. Berryhill, 1:15CV1039, 2017 WL 788306 at *6 and n.7 (M.D.N.C. Mar. 1, 2017) (remanding where Plaintiff's treating physicians were "the only medical sources to have opined on Plaintiff's condition after her second fusion surgery" and "the ALJ did not obtain the assistance of a medical expert to review the additional records"); Shaw v. Berryhill, 1:17CV91, 2018 WL 1322159 at *8 (M.D.N.C. Mar. 14, 2018) (remanding where "[t]he ALJ did not enlist the assistance of a medical expert to review the more recent evidence or provide an opinion regarding the extent of Plaintiff's mental impairments for the later period, and as a result, no medical professional has reviewed the records or provided an opinion for the time period.").

The ALJ also asserted that "diagnostic imaging show[ed] little to no change in [Plaintiff's] mild osteoarthritis of the bilateral knees" and that x-rays showed "essentially no [degenerative joint disease]" in either knee, but the ALJ did not address the orthopedist's further finding that Plaintiff's knee pain was consistent with patellofemoral syndrome, nor did the ALJ address the examination notes reflecting swelling, limited range of motion, tenderness, and an antalgic gait, or how these symptoms would impact Plaintiff's ability to perform the medium work outlined in the RFC, including standing or walking 6 hours per day carrying 25 pounds. Indeed, the Vocational Expert testified that the need to elevate her legs twice per day would preclude any jobs at the medium or light levels. (Tr. at 729.) As for Plaintiff's "lack of significant medical treatment" since her alleged onset date, the ALJ made this finding without further acknowledging Plaintiff's financial concerns prior to her approval for Medicaid in

November 2018 or the pandemic's later impact on her medical care. In short, the Court agrees that the ALJ failed to adequately consider non-objective evidence when evaluating Plaintiff's subjective statements.

Moreover, even if the ALJ's analysis could be read to provide some explanation beyond just the assertion of "insufficient objective medical evidence," the ALJ's decision raises an even larger problem. Specifically, Plaintiff presented a determination from the North Carolina Department of Health and Human Services dated August 27, 2018, finding that Plaintiff was restricted to sedentary work and therefore disabled and eligible for Medicaid. (Tr. at 896-99.) Plaintiff contends that in formulating her RFC assessment, the ALJ failed to properly consider Plaintiff's NC DHHS Medicaid determination in accordance with Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337 (4th Cir. 2012). Under the regulations in effect at the time Plaintiff's claim was filed, and as further explained in Social Security Ruling ("SSR") 06-03p, "a determination made by another agency that [the claimant is] disabled or blind is not binding on" the Social Security Administration ("SSA"). Social Security Ruling 06-03p, Titles II and XVI: Considering Opinions And Other Evidence From Sources Who Are Not "Acceptable Medical Sources" In Disability Claims; Considering Decisions On Disability By Other Governmental and Nongovernmental Agencies, 2006 WL 2329939, at *6 (Aug. 9, 2006) ("SSR 06-03p"). Rather, "the ultimate responsibility for determining whether an individual is disabled under Social Security law rests with the Commissioner." Id. at *7. Nevertheless, the SSA is "required to evaluate all the evidence in the case record that may have a bearing on [its] determination or decision of disability, including decisions by other governmental and nongovernmental agencies." Id. at *6. Therefore, "evidence of a disability decision by another

governmental or nongovernmental agency cannot be ignored and must be considered." Id. Moreover, "the adjudicator should explain the consideration given to these decisions in the notice of decision for hearing cases." Id. at *7.

In Bird v. Comm'r of Soc. Sec. Admin., the Fourth Circuit clarified the Commissioner's obligations under 20 C.F.R. § 404.1504 and SSR 06-03p, and held that the Commissioner must give substantial weight to another agency's disability rating, based on the following reasoning:

> The VA rating decision reached in Bird's case resulted from an evaluation of the same condition and the same underlying evidence that was relevant to the decision facing the SSA. Like the VA, the SSA was required to undertake a comprehensive evaluation of Bird's medical condition. Because the purpose and evaluation methodology of both programs are closely related, a disability rating by one of the two agencies is highly relevant to the disability determination of the other agency. Thus, we hold that, in making a disability determination, the SSA must give substantial weight to a VA disability rating. However, because the SSA employs its own standards for evaluating a claimant's alleged disability, and because the effective date of coverage for a claimant's disability under the two programs likely will vary, an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate.

Bird, 699 F.3d at 343 (emphasis added). In Woods v. Berryhill, 888 F.3d 686 (4th Cir. 2018), the Fourth Circuit explicitly extended the holding in Bird to NC DHHS Medicaid Determinations, based on the close relationship between the purpose and evaluation methodology of the SSA program and the NC DHHS program, and held that

> that in order to demonstrate that it is "appropriate" to accord less than "substantial weight" to an NCDHHS disability decision, an ALJ must give "persuasive, specific, valid reasons for doing so that are supported by the record." McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002) (describing standard for VA decisions); Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam) (explaining that ALJs need not give great weight to VA disability determinations "if they adequately explain the valid reasons for not doing so").

Id. at 692.[5]

In this case, the ALJ addressed the NC DHHS Medicaid determination with the following analysis:

> On August 27, 2018, Deana Garrou, a State Hearing Officer of the North Carolina Department of Health and Human Services, approved the claimant for eligibility for Aid to the Disabled Medical Assistance by finding her to be disabled under 20 CFR 416.912(a). Specifically, Ms. Garrou opined that the claimant retained the ability to occasionally lift 20 pounds, frequently lift 10 pounds, sit for six hours in an eight-hour workday, and stand/walk for four hours in an eight-hour workday with occasional stooping/crouching/climbing. She cited as supportive evidence the claimant's cervical spine fusion of C4-6 in 2016, BMI of 38.22 kg/m2, having no cartilage in her right knee and a June 2018 exam where the claimant had difficulty with heel/toe/tandem walking, was unable to squat, had diminished strength in her left arm/hand, decreased range of motion of the cervical spine, and decreased range of motion in both knees. The undersigned gives this opinion little weight as it was based primarily on a physical consultative examination performed in June of 2018, yet that exam report is not in the current record. However, the undersigned notes that the findings from that exam, as described by Ms. Garrou, are uncorroborated by the other evidence of record. Her difficulties with walking and performing postural maneuvers were not reported by any other treating or examining physicians, her description as having "no cartilage in right knee" does not appear in any of the numerous imaging scans in the record, nor was the extremely limited range of motion testing.

(Tr. at 694.) The ALJ thus declined to give substantial weight to the NC DHHS Medicaid Determination as otherwise required, based only on the fact that the Medicaid determination relied on a consultative examination that was not in the record. However, the ALJ did not further develop the record, either by obtaining a copy of the consultative examination or ordering another consultative examination. An ALJ "has a duty to explore all relevant facts

---

[5] The SSA subsequently revised its regulations regarding the evaluation of medical evidence, providing that decisions by other agencies and not valuable or persuasive and will not be analyzed. See 20 C.F.R. § 404.1520b(c). The Fourth Circuit has held that this new regulatory provision can be applied for claims filed on or after March 27, 2017. See Rogers v. Kijakazi, 62 F.4th 872, 877-80 (4th Cir. 2023). In the present case, however, Plaintiff's claim was filed before March 27, 2017, so Bird and Woods apply.

and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). Development of the record may include ordering a consultative examination, and the regulations address the circumstances under which an ALJ may order such an examination as follows:

> [An ALJ] may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the ALJ] to make a determination or decision on [a] claim. Some examples of when [an ALJ] might purchase a consultative examination to secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis, include but are not limited to:
> (1) The additional evidence needed is not contained in the records of [the claimant's] medical sources;
> (2) The evidence that may have been available from [the claimant's] treating or other medical sources cannot be obtained for reasons beyond [the claimant's] control, such as death or noncooperation of a medical source;
> (3) Highly technical or specialized medical evidence that [the ALJ] need[s] is not available from [the claimant's] treating or other medical sources; or
> (4) There is an indication of a change in [the claimant's] condition that is likely to affect [the claimant's] ability to work, but the current severity of [the claimant's] impairment is not established.

20 C.F.R. §§ 404.1519a(b), 416.919a(b). The Fourth Circuit has held that remand is warranted for failure to develop the administrative record "[w]here the ALJ fails in his duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the claimant." Marsh v. Harris, 632 F.2d 296, 300 (4th Cir. 1980).

Here, as noted above, the only opinion evidence in the record was the non-examining state agency physicians' determinations from 2016 and 2017. Thus, the ALJ rejected not only the NC DHHS Medicaid Determination, but also rejected the only consultative examination in the record, without reviewing it and without obtaining any other examination or medical opinion regarding Plaintiff's condition from 2017 to 2021.

In addition, the Court also notes that the ALJ's decision to reject the NC DHHS Medicaid Determination and the consultative examination is based on the ALJ's summary assertion that no treating or examining physicians noted difficulties with walking or limited range of motion testing (Tr. at 694). However, these assertions are contradicted by the medical records discussed above, with several examination records reflecting a limited range of motion, tenderness on examination, swelling, and antalgic gait.

Ultimately, the NC DHHS Medicaid Determination found that Plaintiff was capable of only sedentary work, and that determination was entitled to substantial weight absent an appropriate reason for rejecting it, under the binding decisions in Bird and Woods. The Medicaid Determination itself relied upon a consultative examination, but the ALJ did not review that consultative examination, or obtain another consultative examination or medical opinion, and instead apparently relied on his own lay opinion.[6] In the circumstances, the ALJ's analysis fails to provide an appropriate reason for failing to give substantial weight to the NC DHHS Medicaid Determination.

---

[6] This failure is further exacerbated by the ALJ's determination that Plaintiff's mitral valve prolapse was not a severe impairment. However, the more recent medical records reflect that Plaintiff was hospitalized in March 2020 with atrial fibrillation, with a discharge diagnosis of mitral valve prolapse and "Type 2 [Myocardial Infarction] secondary to paroxysmal atrial fibrillation with rapid ventricular response" (Tr. at 1025) with ongoing cardiology treatment in 2020 and 2021 (914, 956, 992-93, 1018). The ALJ did not obtain any medical review of these records, and instead found "insufficient medical evidence" of "symptoms or related loss of functioning," (Tr. at 689), thus concluding that even post-heart attack (and post-spinal fusion with lower extremity swelling and an antalgic gait), she could still perform medium work, without any medical opinion or evaluation regarding the records or that determination. See Clayborne v. Astrue, No. 06 C 6380, 2007 WL 6123191, at *5 (N.D. Ill. Nov. 9, 2007) (finding that the ALJ erred by failing to "further develop the record by ordering a second consultative examination," where medical records reflected an additional diagnosis and change in condition after the initial consultative examination); Burns, 2006 WL 2348122, at *5 (stating that "it was error for the ALJ not to order a new consultative examination ... and to rely on [an] outdated . . . assessment . . . ."); see also 20 C.F.R. § 404.1519a(b) (providing that a consultative examination may be obtained when "[t]here is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established").

IT IS THEREFORE ORDERED that the Commissioner's decision finding of no disability is REVERSED, and that the matter is REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). To this extent, it is further ORDERED that Defendant's Dispositive Brief [Doc. #16] is DENIED, and Plaintiff's Dispositive Brief [Doc. #12] is GRANTED to the extent set forth herein.

This, the 24th day of September, 2024.

Joi Elizabeth Peake
United States Magistrate Judge